UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAULA M. MARTICORENA,          ) NO. CV 13-5186-AS
                               )
                               )
          Plaintiff,           ) **MEMORANDUM AND OPINION**
                               )
      v.                       )
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security,                      )
                               )
                               )
          Defendant.           )
_____)


**PROCEEDINGS**


     On July 31, 2013, Plaintiff filed a Complaint seeking review
of the Commissioner's denial of Plaintiff's application for a
period of disability, and disability insurance benefits ("DIB"),
and supplemental security income ("SSI").   (Docket Entry No. 3).
On August 22, 2013, the matter was transferred and referred to the
current Magistrate Judge.  (Docket Entry No. 8).   On January 7,
2014, Defendant filed an Answer and the Administrative Record

1

("A.R."). (Docket Entry Nos. 15, 16). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 12). On March 7, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 17). The Court has taken this matter under submission without oral argument. See C.D. Local R. 7-15; "Case Management Order," filed August 7, 2013 (Docket Entry No. 7).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former secretary and office clerk (A.R. 27), asserts disability beginning November 25, 2008, based on the alleged physical impairments of degenerative disk disease and hip dysplasia. (Id. 157). The Administrative Law Judge, Robert S. Eisman ("ALJ"), examined the record and heard testimony from Plaintiff and a vocational expert ("VE"), Jeanine Metildi, on September 28, 2011. (Id. 19, 40-90).

On November 8, 2011, the ALJ issued a decision denying Plaintiff's application for DIB and SSI. (Id. 19-29). The ALJ found that Plaintiff has the severe impairments of mild degenerative disc disease of the cervical spine; methadone treatment; and systemic lupus erythematosus. (Id. 21). He also determined that Plaintiff has the non-severe conditions of attention deficit hyperactivity disorder, bilateral hip dysplasia, back pain, substance abuse, and anxiety disorder. (Id. 22-24).

The ALJ determined that Plaintiff has the residual functional

2

capacity ("RFC") to perform light work, and can exert up to twenty pounds of force occasionally and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly to move objects; she can stand and walk up to six hours in an eight-hour workday, with normal breaks; she can perform work that does not require climbing ladders, ropes, or scaffolds, or crawling; no more than occasional stooping and crouching; can frequently handle and finger objects with her right and/or left upper extremity; and she should work indoors. (Id. 24).

Relying on the testimony of the VE, the ALJ determined that Plaintiff was able to perform her past relevant work as a secretary (Dictionary of Occupational Titles ("DOT") No. 201.362-030); and office clerk (DOT No. 209.562-010) and that if the RFC was constrained to limit a person to frequent handling and fingering of objects with the dominant upper right extremity but only occasionally with the left upper extremity, Plaintiff could still perform her past relevant work as an office clerk. (A.R. 27).

Alternatively, the ALJ found that, in addition to her past relevant work, Plaintiff was able to perform other jobs existing in the national economy based on the VE's testimony that Plaintiff had acquired work skills from her past relevant work that were transferable to other occupations existing in significant numbers in the national economy. Id. at 28. Accordingly, the ALJ found that, even if the RFC was further constrained to permit Plaintiff to only occasionally handle and finger objects with the right and/or left upper extremity, Plaintiff would be able to perform the duties of information clerk (DOT No. 237.367-022), counter clerk

(249.366-010), and call-out operator (DOT No. 237.367-014). (<u>Id.</u>). The VE also testified that if a person was limited to doing no more than simple, routine, repetitive tasks, the person could perform the duties of a counter clerk and call-out operator, with no erosion of the occupational base. <u>Id.</u> at 29.

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of November 25, 2008, through November 8, 2011, the date of the decision. (<u>Id.</u> 24).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility. (Joint Stip. 4).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); <u>see</u> <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." <u>Hoopai</u>, 499 F.3d at 1074; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996)). To

4

determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb

5

v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

6

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. <u>Webb</u>, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial

evidence and are free from material[1] legal error.

**A.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities.   This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect."   Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight."   Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings.   Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.

---

[1]    The harmless error rule applies to the review of administrative decisions regarding disability.   See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

1990).[2]   Generalized, conclusory findings do not suffice.   <u>See</u> <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); <u>see also</u> SSR 96-7p.

Plaintiff asserts that the ALJ's credibility determination lacks the support of substantial evidence. (Joint Stip. 5). Specifically, she alleges that the ALJ failed to articulate legally sufficient reasons to find Plaintiff not credible. (<u>Id.</u>).

As described by the ALJ, Plaintiff testified at the hearing to the following:

---

[2]   In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.   <u>See, e.g.</u>, <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012); <u>Taylor v. Comm'r</u>, 659 F.3d 1228, 1234 (9th Cir. 2011); <u>Valentine v. Comm'r</u>, 574 F.3d 685, 693 (9th Cir. 2009); <u>Ballard v. Apfel</u>, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). As set forth <u>infra</u>, the ALJ's findings in this case are sufficient under either standard, so the distinction between the two standards (if any) is academic.

The claimant alleged she was disabled and unable to work due to degenerative discs. The claimant indicated she had also been diagnosed with carpal tunnel, and that she had pain in her back, neck, shoulders, arms and hands. The claimant alleged she had shooting pain and numbness when she uses her hands and that she was given a brace for her hands. She alleged she woke up with pain at least every hour. The claimant also indicated that she had been prescribed Vicodin for pain, but that she had become addicted and had been on methadone for several years.

The claimant testified she was in an auto accident 3 1/2 years ago which made the degenerative disc disease in her neck worse; she hurts all the time. She stated she drops things and has headaches when using her hands and neck at the same time. The claimant testified that she had moved in with her parents and was able to clean up, take care of her son, and do some reading, but if she does too much, her hands will shake.

The claimant testified that she had been diagnosed with lupus, and that she gets blistering on her skin. Her doctor gave her medication and told her not to go out in the sun during certain hours of the day.

The claimant testified that she was still on methadone, but that it had come down quite a bit. In fact, the claimant's doctor told her to stop using it.

10

She indicated that she had side effects from medication that made her feel tired and sleepy. The lupus also caused her to be forgetful.

(A.R. 25 (citations omitted)).

After considering the record and the testimony presented at the hearing, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "not credible to the extent they are inconsistent with" the ALJ's RFC. (A.R. 25).

The ALJ discounted Plaintiff's credibility for the following reasons: (1) the objective medical evidence does not support the extent of Plaintiff's symptoms; (2) Plaintiff's treatment has been conservative in nature, and not the type as would be expected from disabling conditions; (3) Plaintiff's medication results in a marked improvement in Plaintiff's symptoms; (4) the treatment notes make no mention of significant or continuing complaints of adverse side effects from medications, such as fatigue and drowsiness; (5) Plaintiff has been able to engage in a wide range of daily activities, in contrast to her allegations; (6) Plaintiff's credibility is diminished in light of her reported arrest record, which includes charges of driving with a suspended license, possession of drugs and drug paraphernalia, assault, and driving under the influence; and (7) it is possible that Plaintiff's allegations are "influenced by her 'goal' to get SSI benefits." (Id. 26-27 (citations omitted)).

As set forth below, the Court finds that the ALJ stated legally sufficient reasons for his adverse credibility finding.

### 1. __Objective Medical Evidence__

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

Here, after reviewing the medical records, the ALJ generally found that the objective medical evidence did not fully support Plaintiff's complaints of total disability. (A.R. 25-26). The Court's review of the record supports this finding.

On April 8, 2009, Dr. Ella Tomayo, the internal medicine consultative examiner, found "no significant functional impairment at this time." (Id. 272). Similarly, Dr. Harrell Reznick, the psychological consultative examiner, found that Plaintiff could perform "simple and repetitive tasks with minimal supervision... with appropriate persistence and pace over a normal work cycle... [and that] She is able to understand, remember and carry out at

least simple to moderately complex verbal instructions without difficulty . . . [and] would experience . . . no difficulties interacting with others in the workplace. (Id. 263-64). Records from Dr. Gerald Swanson, a treating physician, in 2010 revealed tenderness in the neck due to a possible neck sprain as the result of a 2008 motor vehicle accident, but otherwise normal motor strength in the upper extremities, no muscle atrophy, normal reflexes and sensation, and a full range of motion in the shoulders. (Id. 219-21). On July 20, 2011, Plaintiff's treating physician, Dr. Salvatore Danna, stated that Plaintiff "does not qualify for disability being so young and having *minimal symptoms*." (Id. 360 (emphasis added)). Dr. Danna recommended that the "intensity of [Plaintiff's] pain" be treated with injections and the continued use of muscle relaxants, analgesics and a fentanyl patch. (Id.).

Furthermore, diagnostic testing results revealed only normal or mild results. For example, a May 2008 right elbow and hand x-ray was normal (id. 338); a June 2008 x-ray of Plaintiff's thoracic and lumbar spine was normal (id. 339); an August 2008 left foot x-ray revealed an old fracture (id. 340); a December 2009 CT scan of Plaintiff's cervical spine was normal (id. 222); March 2010 lumbar and cervical MRIs were mild or normal (id. 342); and an August 2010 cervical MRI showed only degenerative changes with a 3mm disc protrusion at C5-6 (id. 341), which Plaintiff's treating physician termed "only a mild amount of cervical strain" (id. 367). EMG studies of Plaintiff's upper extremities taken in September 2010 were essentially normal, showing evidence of strain and tension but

13

no nerve damage (Id. 360, 381).  On September 12, 2011, Plaintiff's doctor stated that Plaintiff "is not capable of performing heavy work . . . and she cannot perform heavy lifting or recurrent use of hand and wrist as a physical laborer." (Id. 369).  He did not in any way suggest that Plaintiff was not capable of any work or that she was completely disabled.  In fact, as set forth below, his treatment notes and assessments for the period January 2010 through September 2011 indicate that Plaintiff was responding well to the conservative treatment provided. Id. at 361-69.

Thus, the Court finds that substantial evidence supports the ALJ's credibility analysis with respect to his assessment that the objective medical evidence did not support Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms.  Accordingly, this was a clear and convincing reason for discounting Plaintiff's credibility.

As discussed below, the objective medical evidence was not the sole legally sufficient reason for discounting Plaintiff's credibility.  See Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006)(ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).

2.  **Plaintiff's Positive Response to Conservative Treatment**

The ALJ relied on the fact that Plaintiff's "treatment has been conservative in nature, and not the type as would be expected from disabling conditions." (Id. 26).  He noted that the lack of

more aggressive care, such as surgical intervention, "suggests that the claimant's symptoms and limitations may not be as severe as alleged." (Id.) He also noted that treatment with anti-inflammatory medications, muscle relaxants, analgesics, and injections resulted in "marked improvement in her symptoms." (Id. (citing id. 362, 366)).

A review of the record supports the ALJ's conclusion. For instance, a January 12, 2011, progress note from Dr. Danna, Plaintiff's treating doctor, states:

> Paula reports to our service on 01/12/2011 and has had marked improvement in her carpal tunnel syndrome and cervical disc disease with much less pain and is now responding favorably to a combination of antiinflammatory agents, muscle relaxants, analgesics, and Seroquel for anxiety and depression. Her upper extremity EMG showed no evidence for significant slowing of the nerve velocity times nor injury to her cervical spine, but a mild carpal tunnel symptom complex was noted in the right hand. Otherwise, she is doing quite well and will be treated conservatively with a combination of muscle relaxants . . . and B-complex vitamins.

(Id. 366).

Progress notes dated June 6, 2011, from Dr. Danna reveal similar findings:

15

Paula reports to our service on 06/06/2011 with a combination of carpal tunnel syndrome, cervical disc disease, and nerve root compression without significant radiculopathy. The injection we gave her months ago has completely resolved most of her symptoms and in my opinion, the surgical candidacy is not an option in this case, but rather continued use of medications, exercise programs that are light and fentanyl patches for her pain, naproxen for her inflammation, and Soma as a muscle relaxant and the use of Seroquel at h.s. to help her with her anxiety and sleeplessness along with Neurontin for her antineuritic pain relief.

(Id. 362). Dr. Danna also opined that Plaintiff was not a candidate for surgery, noting that Plaintiff's cervical strain is not surgically treatable (See, e.g., A.R. 367 ("This inflammatory polyneuritis versus radiculopathy is not surgically treatable .")). and that her medications were stabilizing her pain after other office visits. (See, e.g., id. 361, 363, 369).

Other records also demonstrate that Plaintiff's treatment has been routine and that her conservative treatment has had positive results. On March 23, 2010, Dr. Swanson indicated that the treatment goals will emphasize the "development of a self directed, exercise program," and authorized exercise-based physical therapy. (Id. 220). In October 2010, Dr. Swanson ordered wrist braces and further diagnostic studies for Plaintiff's carpel tunnel syndrome

16

but did not suggest that surgery was necessary. (Id. 288-95). Plaintiff's medical appointments were generally routine follow-up appointments and there is no evidence of acute exacerbation of her symptoms. (See, e.g., id. 219-21, 245-54, 288-95, 301-32, 360-69).

Plaintiff argues that the ALJ fails to cite to "any evidence that there exists more aggressive treatment options or that the medical professionals have recommended them," and states that Plaintiff should not be "discredited for *failing to pursue* other treatment options where none exist." (Joint Stip. 7-8 (emphasis added)). This misstates the record. The ALJ discredited Plaintiff's testimony because it was inconsistent with the recommendations by her treating doctors that she continue with the prescribed conservative treatment because Plaintiff was responding well to such treatment. (A.R. 362). Contrary to Plaintiff's contention, the ALJ did not discredit Plaintiff for failing to seek more aggressive treatment.

The ALJ was entitled to discount Plaintiff's credibility based on her positive response to conservative treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

Thus, this was a clear and convincing reason to discount

Plaintiff's credibility.

   **3.** **No Significant Side Effects from Medications Reported in the Record**

   The ALJ also discredited Plaintiff's testimony that her medications caused her to experience fatigue and drowsiness because there was no mention of these complaints in the treatment records (A.R. 26; see also id. 73).  The ALJ surmised that if Plaintiff was experiencing these side effects, presumably she would tell her doctors so that they could make adjustments.  (Id. 26).

   The ALJ's finding is supported by the record which does not indicate that Plaintiff reported experiencing fatigue as a result of her medications, nor is there any indication that certain medications were discontinued or modified as a result of such complaints.  (See, e.g., id. 219-21, 245-54, 288-95, 301-32, 360-69).

   In assessing a claimant's credibility about her symptoms, an ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).  An ALJ may also rely on "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling symptoms.  Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).  In this case, Plaintiff's statements at the hearing regarding medication side effects were inconsistent with the medical record.  This was a valid reason for discounting Plaintiff's credibility.

18

1

2

**4.    Activities of Daily Living**

3

   The ALJ also found Plaintiff's subjective complaints to be
4
inconsistent with her "wide range of daily activities." (A.R. 26).
5
These activities included cleaning up; taking care of her son;
6
performing all self-care activities including dressing and bathing;
7
running errands; shopping; preparing meals; reading; watching
8
movies; bathing and playing with her dog; attending painting
9
classes; taking public transportation independently and as her
10
primary means of transportation; handling money and paying bills;
11
driving her car; and "performing around the household well enough
12
to be functional." (Id.)

13

14
   Plaintiff contends that the ALJ failed to adequately explain
15
how Plaintiff's routine activities translate into the ability to
16
perform work on a full-time, competitive basis. (Joint Stip. 14
17
(citations omitted)).  However, Plaintiff cites no authority that
18
requires the ALJ to do so.  Here, the inconsistencies between
19
Plaintiff's claimed inability to work due to "shooting pain and
20
numbness when she used her hands" (see A.R. 25, 67, 171), and her
21
admitted daily activities amply support the ALJ's adverse
22
credibility determination.

23
   An ALJ may properly rely on inconsistencies between a
24
claimant's testimony and her conduct and daily activities.  See,
25
e.g., Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)
26
(daily activities can constitute "clear and convincing reasons" for
27
discounting a claimant's testimony);  Thomas v. Barnhart, 278 F.3d

28

947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported the rejection of the claimant's credibility); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (claimant's testimony regarding daily domestic activities undermined the credibility of her pain-related testimony); <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication); and <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (("[I]f, despite [a claimant's complaints], a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's [complaints] do[] not prevent the claimant from working.").

Here, the ALJ's finding that Plaintiff's allegations regarding the disabling effect of her symptoms were inconsistent with the daily activities she was able to engage in was a valid reason for discounting Plaintiff's credibility.

///

///

///

**5.** **Plaintiff's Arrest Record and "Goal" to Obtain Benefits**

Plaintiff argues that the ALJ improperly relied on Plaintiff's arrest record to discredit her testimony, without specifically articulating how her crimes adversely impacted her credibility. (Joint Stip. 8).  She also contends that the ALJ's comment that Plaintiff's complaints were motivated by a desire for financial gain is not a valid reason for discrediting her testimony. (Id. 9).

The ALJ cited Plaintiff's arrest record for driving with a suspended license, possession of drugs and drug paraphernalia, assault and driving under the influence, and her stated "'goal' to get SSI benefits" as additional reasons to discredit her testimony. (A.R. 27). Although some courts have found a claimant's criminal history or imprisonment to be a proper basis on which to discount credibility, see, e.g., Simmons v. Massanari, 264 F.3d 751, 756 (8th Cir.2001) (ALJ properly rejected claimant's subjective complaints based, in part, on claimant having served time in prison); Williams v. Comm'r of Soc. Sec., 423 F.Supp.2d 77, 84 (W.D.N.Y.2006) (ALJ properly based negative credibility determination, in part, on claimant's testimony "she had engaged in assaultive conduct and possibly criminal behavior in the past ...."), this Court would limit such rationale to convictions involving moral turpitude.  Here, Plaintiff was arrested for conduct which does not involve moral turpitude and cannot be a proper basis for the ALJ's adverse credibility finding.  However, because the Court has already determined that sufficient evidence supported the ALJ's decision to discount Plaintiff's subjective

complaints, it need not determine whether the ALJ materially erred in considering Plaintiff's arrest record or her stated motivation for obtaining benefits.  See Carmickle v. Commissioner, 533 F.3d 1155, 1162-63 (9th Cir. 2008)(finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if the ALJ's "remaining reasoning and *ultimate credibitliy determination* were adequately supported by substantial evidence in the record")(emphasis in original); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)) (the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'").

Here, the ALJ's decision finding Plaintiff less than fully credible is supported by legally valid reasons.  Any error by the ALJ in relying on Plaintiff's arrest record or her stated motivation to obtain benefits does not "negate the validity" of his adverse credibility finding.  Carmickle, 533 F.3d at 1163 (quoting Batson v. Commissioner, 261 F.3d 1190, 1197 (9th Cir. 2004)).

## CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds.  The Court therefore defers to the ALJ's credibility

22

determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995).  Where the ALJ has made specific findings justifying a decision to disbelieve Plaintiff's symptom allegations and those findings are supported by substantial evidence in the record, "we may not engage in second guessing." Thomas, 278 F.3d at 958-59.

**ORDER**

     For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

     LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 14, 2014.


                                        /s/
                                        ALKA SAGAR
                                        UNITED STATES MAGISTRATE JUDGE